The Illinois Appellate Court Division is now in session. The Honorable Justice Raymond W. Mitchell is presiding. Good morning. Please be seated. We're here today for an argument in the Patriot Group v. Hilco. It's our case number 1170345. We've reviewed the briefing and the record for me with the authorities. You can certainly take that into account with your presentations today. And with that, we'll get started. We're going to allot 20 minutes a side with 5 minutes for rebuttal. Please try to keep track of your time. And with that, counsel for the appellant. And if each counsel could be sure to identify themselves when they step forward. Thank you, Your Honor. May it please the courts. Will Brunt for the plaintiff appellant, the Patriot Group LLC. We are here on appeal from the dismissal of a motion under 735 ILCS 52615. Thus, the parties are here on appeal under a de novo standard of review. The parties briefed do not present a serious disagreement on the standard of review or the law that applies to the claims that were dismissed by the circuit court. Delaware law governs the parties' claims. There's Patriot's piercing claim. Delaware law applies a two-pronged and multi-factor test for whether a plaintiff can maintain a piercing claim. No one factor is determinative. Rather, decision on the merits is based on some combination of factors. Some courts have called it a totality of the circumstances. It's not a rigid, bright-line test. Rather, it's a fact judgment based on that totality of the circumstances. There's also no serious disagreement about the pleading standard that governs here. Obviously, we're here on appeal with 615 motion. Inferences on such a motion must be drawn in non-moving parties' favor. Plaintiffs are required to state the ultimate facts, but not all of the evidence that would support those facts. Here, Patriot has done precisely that, set out facts that support piercing and that are addressed to each of the elements in the piercing analysis. Trayton's criticism of those facts fall in two categories. First, they assert that facts are not pled, only mere conclusions. That's simply wrong. We have pled the facts to sustain a piercing claim and gone on. One man's conclusion is another man's claims. Let me ask, in the underlying litigation, you were able to take discovery and points relative to corporate formalities, corporate structure, and the like? Your Honor, in the underlying litigation, I think you're referring to the one that led to the judgment? Yes. There was discovery on a number of issues, but those were focused on the claims that were issued in those cases, which were fraud, fraudulent transfer, negligent disrepresentation, correct? Well, what I'm trying to understand is, was there – the discovery in that case certainly would have informed you of – so you would have had access to information and facts to be able to plead in the subsequent case, right? Well, the focus of the discovery, I agree there was some similarity of issues at certain points, but not a complete identity of issues. And the reason being that a claim for fraud, you don't necessarily have to prove undercapitalization, for example, or failure to observe corporate formalities. It's – you know, the elements of fraud are just different from a piercing claim. Sure. Your right to discovery extends beyond your mere claim to extend to the transaction itself. I mean, to just follow up, is there anything specific that you think you could have gotten at with greater discovery that is relevant to this claim and wasn't relevant to the fraud? Thank you, Your Honor. I think more focus on the question of undercapitalization, more focus on the question of corporate formalities. Those are clearly elements that are not present in a typical fraud claim. And even focus on the question of the timing of insolvency. While important for a piercing claim, you know, the fact of insolvency, it's not as critical, obviously, to a fraud or negligent misrepresentation claim. Okay. So going back to those ultimate facts that we pled, we did plead in this complaint, not only that financial was undercapitalized, but why it was undercapitalized based on the nature of its business. In other words, capitalization, it's a fact judgment based not only on a simple 10-to-1 test, which trading suggests is enough, it's got to be looked at the totality of the circumstances, which is inappropriate for a decision on the pleadings. But you knew, your client knew, what the capitalization was when he entered into this agreement, right? He knew what Hillco was putting forward, Hillco Financial was putting forward in this. Correct. Knowledge of the capitalization, that is true. Our client did know that. What they didn't know is the nature of the loans that trading would ultimately, what they intended to invest in, the high-risk loans that they ultimately decided to do their business in. I thought you had some oversight on those loans, or some, I mean, did you not? You had something to say about what those loans were. There was some ability to review the loans, but in terms of oversight, ultimately, those decisions were ultimately made by trading. Trading controlled the business of financial. But the whole reason to go into this agreement was the fact that these were going to be high-risk loans. I'm not sure I entirely agree with that, Your Honor. I mean, there's an element of, and I think that that goes to an element of the spectrum of risk, and I think that's exactly why those types of allegations potentially would be subject to further discovery and a full judgment on the merits in this kind of a piercing claim. We also said, you know, why financial was insolvent during the relevant time periods, why financial failed to observe corporate formalities and acted as a facade, and why financials and trading's actions demonstrated an element of injustice and unfairness. Accordingly, Patriot more than met its obligation at the pleading stage to plead a piercing claim. Can I ask, is there, just trying to understand your position relative to the trial judge's ruling, is it your position that he was just wrong in his conclusion about the consequence, the adequacy of pleading, or is it your position that you, there are more facts that you could plead, and you should have the opportunity to do that? I think both, Your Honor. I mean, I think the first one is the primary one. I think ultimately the focus of this appeal is the facts were alleged in the First Amendment complaint. There's an obligation to give deference and, you know, inferences in the plaintiff's favor at that stage, and I think that the court simply didn't do that in this case as urged by trading. I think now is a good time to walk through each of those five relevant factors, starting with undercapitalization. Trading contends that the facts alleged on undercapitalization are conclusory, that there's no explanation for it, why the original investment in Buy Hill co-trading and financial is insufficient, and that goes directly against the actual allegations of the First Amendment complaint, and I refer to the court's paragraphs 26, 30, and 31, which explain clearly Hill co-trading's equity contributions was unreasonably low in light of the undisclosed risks of a loan token trading intended that Hill co-financial would originate. So we've not only said that 10 to 1 was inadequate, but said why. And so then a judgment beyond that as to why that allegation is not enough is essentially finding as a matter of law that that capitalization was sufficient, not giving deference to the pleadings of the non-moving party on the motion to dismiss. We also said, and I think it's important, that financial was decapitalized by trading after it was initially capitalized. Other work courts have found that factor to be important, too, looking undercapitalization. Is this where you're saying that there was tax payments that were taken out? Correct, Your Honor. That's one of them. They were taking ongoing fees for a period of time out, and basically taking their initial investment out, leaving an undercapitalized company. And that brings us to the question of whether there's a temporal requirement to look at undercapitalization. The circuit court looked at, was there a undercapitalization at the time the transactions took place? And that's not consistent with Delaware law. Delaware law looks at, was the company undercapitalized such that it could not fulfill its obligations as they matured? And, as Justice Romares, you referenced, because of that tax payment, because they took money out, that left the company unable to fulfill its obligations as they matured. So you're saying under Delaware law, it's a moving target as opposed to a fixed time and place? That's exactly correct, Your Honor. And we settled the Mannequin case and the North American Catholic Educational Programming Foundation cases on that point. There's no case law going the other way. So it's by taking capital out, they're making them less and less well-capitalized is your position? Correct. So, again, we have a variety of facts that go to these issues. First, financialists set up an initially undercapitalized position, and then it was decapitalized over time. Under all of those factors, we've pled enough to sustain that factor. Mr. Merrick, I know you're an expert in commercial law, and you referenced Delaware law, and the parties agreed that Delaware law applies here. Isn't it true that Delaware law is notoriously difficult for bail-piercing claims, compared to other jurisdictions like Illinois? I'm sorry, I missed a critical word there in that question, Your Honor. Delaware law is, I don't want to say hostile to bail-piercing claims, but it's particularly difficult to bring under Delaware law. I think, Your Honor references, there's a lot of language, a lot of decisions in Delaware, and frankly in other jurisdictions, that say to ultimately prevail on a piercing claim is difficult. It's a high obstacle. Now, that is different from pleading a claim. And that's where I think we have, that's where we are today, and I think we have done enough to plead a claim for piercing going forward. We've also pled more than enough on lack of corporate formalities. Essentially, a trading position on that is that each one of the individual things that we talk about the lack of corporate formalities, there's some case saying that alone isn't enough. But again, because we're looking at totality of the circumstances test, together with undercapitalization, together with insolvency, and a series of lack of corporate formalities, including intertwined shared leadership, representations by the CEO of trading that he would closely supervise. I don't understand why either of those are lack of corporate formalities, and maybe I'm missing something. I understand that they worked to patriots' disadvantage in a serious way, but how are they a lack of corporate formalities? Well, all of those things go to the question of is financial operating at all independently, or does it have effective total control over the operations of financial? I guess that's my question. Is there a case law that's saying when one company controls another, that's a lack of corporate formalities? Yes, it's certainly a factor going forward. I'll give you one example, the Mannequin case, which is Delaware Chancery 2021. Some of the factors that they referenced in terms of lack of corporate formalities was overlapping personnel and directors, sharing the same officers, and the fact that the parent must give approval to the subsidiary before debts were paid. And it doesn't matter that Patriot knew of that organization going into this agreement? I don't believe it does. I mean, this is not a case where there's a reliance factor or anything like that. It simply was there a unity of interest between them. There clearly was under these circumstances, and as I'll get to in a moment, that unity of interest led to the injustice that has led to this piercing claim. And let me go straight to improper siphoning of funds and talk about it together with the element of injustice and unfairness here, and I think, Justice Navarro, you referred earlier to the tax distribution. The timing of that tax distribution is illustrative, and I think there's a lot of facts in here, but this chapter shows how the corporate form was abused in this particular case. So mid-2007, many of financials outstanding loans default. That's paragraph 46 of the complaint. September 2007, at the same time they're convincing Patriot to put more money in, they convince Patriot to put $10 million more in an additional loan in September 2007. That's paragraphs 47, 48, and 52. January 2008, there's a corporate resolution by trading suggesting that financials' estimated profits for 2007 is going to be more than $9 million. At the same time, they take out a distribution of $3.7 million. February 29th, they finally disclose that the loans have been in default to Patriot. As of March 2008, so less than two months later, they stop paying on the loans that Patriot has just offered. So you put that together, it shows how in this particular circumstance, the unity of control between trading and financial and the ability to make decisions unilaterally and take funds out, which clearly goes to the siphoning, the siphoning function, and actually, Justice Mitchell, that's another focus. The idea of what is siphoning is a fact issue that clearly doesn't come up in a fraud case, the very terminology and the concept of it. But the fact of siphoning is one of the five elements in our Delaware law to justify a piercing claim. So putting those together, that shows that it's not only facts that support certain of the elements under the Mannequin factors, those five factors, but also that overall element of unjustness and unfairness. The fact that they were able to do that and leave Patriot in that position. So if we agree with you that, you put it out, the case goes back, and it goes back to Judge Duffy for a trial in the merits. It's an equitable claim, so there's no right to a jury trial. Where is it going? I mean, the trial judge has already told you it is going to be a plain, let alone that you prevail on it. Well, I think Your Honor's earlier question asking about additional discovery is illustrative. And I think the other thing, too, is when you have live testimony, live witnesses, and explain what's the intent behind things, how are things done, it's a different framework going forward. And so I think there is things that can go forward. Speaking of Justice Duffy, I'm going to turn next to the question of collateral estoppel, which he, as you may have seen, rejected under the first motion to dismiss, basically finding there's no identity of interest between the claims that were decided in the earlier appeal and the issues that are up in this case. I think this is absolutely correct, and, Justice Mitchell, your questions earlier go to that question, which is fraud claims, fraudulent charges. Fraudulent charges, transfer claims, negligent misrepresentation claims, clearly different elements, clearly different material issues to be decided on a piercing claim. There simply can't be collateral estoppel. I'm sorry? There is some overlap, but they're not identical. Yes, and overlap is not enough. It's got to be clear and convincing that there's an exact identity and interest, and that clearly is not present here. I think I will reserve the remainder of my time unless there are any further questions at this point. Okay, very good. We'll hear from you on the other side. Thank you. Thank you. May it please the Court, good morning, Your Honors. Morgan Hurst for the Appellee here, Hilco Trading. I want to introduce my team as well. Elizabeth Marino and Taylor Grody have been working on this case for a long time. Your Honors, this is not your typical 2-615 appeal. For nearly 15 years, Patriot has been engaged in seemingly unending litigation, pursuing, recovering losses. It suffered on the loan to Hilco Financial. Hilco Financial defaulted on that loan in 2008 in the midst of the Great Recession, the same month that Bear Stearns closed its doors, and Hilco Financial closed its doors at the end of that year. Meanwhile, they lost a lot of money and your client didn't, so they're pretty unhappy about that. I disagree with my client didn't lose a lot of money as well, Your Honor, but that's an issue from the prior case. But suffice to say that the efforts Patriot has made to sue my client over the last 15 years have been uniformly unsuccessful in multiple courts, in front of multiple judges, including in front of this court in 2018. Current efforts should suffer a similar fate, and this court should affirm. I want to get to actually the first question Justice Mitchell asked, the discovery question. And I forgive Mr. Burt for not knowing because he wasn't there. I was. They took discovery on everything. At the time discovery was initiated back in, dare I say, 2011 when my hairline was a little stronger, there was a very personal claim filed by Patriot against my client seeking appeals to bail at that time. They eventually voluntarily dismissed that claim, but discovery was ongoing. Most of the documents had already been produced in the case, hundreds of thousands ultimately of pages of documents. Every single document about Hilco Financial and about Hilco's previous relationship with Hilco Financial has been produced. There were more than 20 depositions of every official known to man involved in this relationship. So to answer your question, Justice Mitchell, there is no discovery left to take. Hilco Financial closed its doors in 2008. Nothing has happened since. We did five years of discovery in this case. Let me ask you this. It's more of an academic question. Can you have a bail-piercing claim before you have a judgment? And that ultimately, without getting too far into the weeds from what happened 13 years ago, I think ultimately that was the reason that claim was dismissed. It was arguably unright. That said, there was nothing from a discovery standpoint left to show. They've got everything. Okay, but the decision that we issue in this case will have consequences for other cases. And that won't always be the case, right? Yeah. And when you're talking about claims which sound in fraud and deceit, there's a disparity of knowledge between the fraud user and the victim in fraud. And yet, in a fact-pleading jurisdiction in particular, we're imposing these pleading requirements upon a party that, by definition, doesn't know the truth. So how do we reconcile that? I understand that in your position here, it would be that it's not a non-insurer because they had discovery under their lawn chips. What about a case where they didn't? So to your question, there has never been a plaintiff with more information and able to keep facts and meet the pleading requirement than Patriot here. They are the best position plaintiff ever to do it. Never say never. Never say never, but they are as well positioned as anybody. To your question, though, if you want to go back 13 years, for example, even, and had they tried to plead it at the time, we are still a fact-pleading jurisdiction. You are correct. Delaware law, which is, by the way, a notice-pleading jurisdiction, and which dismisses bail-piercing claims all the time under the more relaxed standard, nevertheless requires you to at least pass that threshold. Bail-piercing is, keep in mind, what we're talking about here is the most extraordinary, extraordinary remedies under Delaware law. That gets my other academic question, which is the distinction between the height and plead fraud standard in a fact-pleading jurisdiction versus the height and fraud standard in a notice-pleading. And what is the difference? Now, we are not alleging here that they are subject to a fraud standard, a foul rule 9b type of standard. We're simply alleging that they are subject to the ordinary fact-pleading standard here. Now, there is, to get to your academic question, there's an interesting case law back and forth as to whether the fraud and injustice piece of a bail-piercing claim needs to be pled with particularity. That's not our argument here. We don't think they make it under even the basic fact-pleading standards at all. And so let me actually flip quickly to talk about collateral estoppel a little bit, and then I'll go back and talk about the elements. Because we do actually think the collateral estoppel point is an important one. I do want to correct the record on one thing. Judge Duffy did not rule on collateral estoppel on the complaint before your honor. He passed on it. So the issue was moved because he'd already had the statistics in his team. Correct. In the original complaint that was filed, which was devoid of factual allegations, the argument that we raised on collateral estoppel and, indeed, raised judicata was very different because we were facing a different complaint that they originally filed. On that one, he said collateral estoppel was not present. But to the question, the issues here are identical, and here's why. They based their fraud and injustice claim on basically two allegations, one, that Hilco Trading drafted false financial statements. We duped Patriot into loaning more money to Hilco Financial with all these phony, fraudulent financial statements. That's unfair. That's unjust. That's a misuse of the court form. That's allegation one. Allegation two, our subsidiaries, the appraisal entities, we directed them to do inflated appraisals that demonstrated that the collateral that Hilco Financial was getting on their loans was worth way more than it really was, and that helped dupe Patriot into loaning more money. That's their two set of allegations to prove their fraud or injustice. Those are the allegations and facts that this court decided in 2018. We're not saying Bill Pierson and fraud are the same thing. What we're saying is what they are trying to do in this complaint to prove the fraud or injustice that they have to prove for Bill Pierson are based on the exact same allegations, the identical allegations, that they pled and lost in front of your eyes six years ago. And all you need to do is read paragraph 36 of their complaint, paragraph 51 of their complaint here, and then read, I believe it's paragraph 115 of their complaint in the old case in conjunction with the first district's order, and you can tell that these issues are identical. We're not saying that they are far from bringing any Bill Pierson claim in the history of time because they lost a fraud claim. What we're saying is you can't plead and prove a Bill Pierson claim based on allegations and based on issues that you already lost. That's what they're trying to do. So back, then, Your Honors, to the elements. But we, again, don't need to reach that if we agree with you. You don't, and that's what Jeff ultimately did on the First Amendment complaint before. He didn't reach it because he found they couldn't state a claim under 2615. I think you know if Your Honors said it right. Federal courts, it's not that Bill Pierson is just taught to prove. It's taught to plead. That comes straight from the Delaware Chancery Court. Federal courts, as you know, take the corporate form very seriously and disregard only in exceptional circumstances. The quote, I think we have in our brief, but I think it's the best way to describe it is, to survive a motion to use in this, a client must allege facts that the controlling owner operated the company as an incorporated pocket book, and that the corporation is a sham and exists for no other purposes than as a vehicle for fraud. That is simply not what they have alleged in this case. It doesn't even come close. So the two elements in Bill Pierson are operating as a single economic entity and then use of the corporate form for fraud or injustice. I'm not going to go through all five of the factors, and we agree with the appellate on what the factors are to show a single economic entity. There's no disagreement there. Our briefs cover that, I think. The case law is pretty thoroughly discussed. I think their biggest break, though, is that Judge Duffy didn't give them inferences they believe they're entitled to on a 615 motion. But keep in mind, the inferences they're entitled to are based on well-planned facts or reasonable inferences based on those well-planned facts. You aren't entitled to inferences based on legal conclusions, and you aren't entitled to inferences which are countered either by your own allegations or the documents that you speak to in your complaint and are incorporated into your complaint for purposes of 2615, or, by the way, inferences which are contrary to what this court can take judicial notice of, i.e., this court's order in 2018. Yet their allegations here are littered with those very types of allegations for which they're not entitled to any inferences. So financial is not set up, and they say financial wasn't set up as a vehicle for fraud at its inception, when they initially contracted. But later, when they start to have this tax liability and they allege, they make the allegations, that there's this outstanding tax liability or there's going to be this tax due because of profits, and allege that that liability or tax liability did not exist and that Pilko knew that, how do we get past that? So happy to respond to that. That, I'd say, goes most to the siphoning question. Yes. And is the tax distribution in January of 2008, does that state the factor of siphoning or at least potentially establish it? And the answer is no for many reasons. First and foremost, the fraud has to be in the misuse of the corporate form. Correct? Here, they actually don't allege a misuse of the corporate form. The corporate form here, the LLC agreement, required distributions to cover members' taxes. It's consistent with Delaware law. They allege in their complaint that a corporate resolution is issued by financial putting forward and approving of the tax distribution. Now, they take issue with whether the tax distribution should have been made, whether financially it should have been. But that's not a misuse of the corporate form. That's not trading saying, hey, write me a check right now and do this. This is following the corporate form, potentially incorrectly and potentially improperly, but it's following the corporate form. Those cases get split off, and Judge Duffy actually cited a number of them. Cases where fraudulent transfer has been found, fraud has been found, still don't amount to siphoning because it's not a misuse of the form. Now, here there's a second reason, Justice Navarro, why this doesn't work for them. Their whole claim that the tax distribution was improper on its face cannot be sustained. It's not a reasonable conclusion because it's based on the idea that the financial statements on which that distribution were based were false and incorrect. And guess what this court found six years ago? Those same financial statements were not false and were not incorrect. So that tax distribution is based on a mountain of sand that once you start pulling away, it implodes on itself. It does not work. It is not a reasonable conclusion for purposes of 2-615 that that tax distribution amounted to siphoning. The other factor I want to talk briefly about that they do focus on is the initial capitalization of the company as a whole. And as Your Honor saw in the briefing, capitalization is rarely on its own going to be the factor that shows a single economic entity. It's one of the factors, but on its own it can't be. They complain about the initial capitalization here, and they complain that Judge Duffy did not give the inference that their claim that financials capitalized with $5 million of equity, and that wasn't enough. They claim that was unfair of Judge Duffy or improper, I should say, of Judge Duffy not to assume that fact is true for purposes of 615. That's incorrect for at least two reasons. Number one, at the end of the day, what does the allegation that Hilco financials capitalized with $5 million, what does that infer about its capitalization without more? It doesn't infer anything. They could have alleged it was capitalized with $5 billion and then said that that wasn't enough. Is that enough to get past 615? I certainly don't think so, and the courts don't think so either. We cited a number of cases, including motions to dismiss, where capitalization of far less, a case where there was no capital, a case where there was 20,000 euros, which even with a bad exchange rate, I don't think it's $5 million, was not enough capitalization. And then just to borrow your question, get on the second point, why the capitalization allegation fails. They knew. They knew exactly where it capitalized, and the question here is, can we make a reasonable inference that our capitalization was improper? They are sophisticated investors. They're a hedge fund in Connecticut. They knew what they were getting into. They knew what our capitalization was, and yet they made the decision to issue not once but twice $20 and $30 million loans. They're saying that there was a decapitalization after the initial capitalization and that that's part of it. The only allegation they make of that, Your Honor, in their complaint, is the tax distribution. Right. They only discussed. Yeah. There's no other allegation of siphoning or decapitalization or otherwise within their complaint. So I don't know where that comes from, Your Honor. But once again, it is not a reasonable inference here to find that capitalization was improper. I think we went through the factors of dominion and control of the facade. This company had corporate records. It had board meetings. It had its own officers. These are all things they pled, not me. Those are all the hallmarks of actually following corporate formalities. Courts in Delaware repeatedly reject allegations along those lines as being sufficient to state a claim. Last thing I want to talk about. This actually gets to the second element of bail piercing, the fraud or injustice. And this goes to the reliance point. One of the items this court found back in 2018 was Patriot did not have a right to rely on the alleged false statements. As you guys know, the element of common law fraud includes reasonable reliance. This court actually made a determination that Patriot didn't have a right to rely on the alleged false statements because Patriot had everything at its disposal. This is within the 615 pleadings because it comes from the loan agreement, which is quoted extensively by Patriot. Patriot had a right to approve the loans before they were made. They got loan information before the loans were made. They obviously knew of the structure of Hillco Financial and Hillco Trading's role in there. They had all of this information. And then, of course, this court had, in 2018, all of the facts that underlie why, in fact, Patriot was not acting reasonably in their alleged reliance. Well, this is important because it goes to the question of whether a fraud or injustice for bail piercing purposes has happened. If they had all of this information at their disposal and went ahead anyway and did what they did anyway, then why should they get to ignore the corporate form? Why should we resort to an extraordinary remedy of piercing the corporate bail if they were fully aware of all of this in the first place? And there was a case, in fact, a case this court did, the Illinois Appellate Court, under Illinois bail piercing standards, very similar to Delaware bail piercing standards. And in that case, the court found that because the player entered into the situation with full knowledge of the relationships among the players, the law is clear that no injustice for purposes of bail piercing occurred. That's the 1515 Northwells case that we cited in our brief. There simply is no fraud or injustice here. Fraud or injustice is based on allegations that this court already considered and rejected, and it simply cannot make a fraud or injustice for purposes of bail piercing. If Your Honor has any further questions, I will see you in the bench. Thank you. Thank you. Thank you. Thank you. Your Honor's questions at the outset of the argument reference the fact that the piercing claim was not pending. And it's sort of a basic truism in circuit court. You don't get discovery on collection issues while a case on the merits is going forward. That's why a piercing claim is typically brought after you get a judgment to begin with. The idea that all discovery is done, we disagree with that allegation. But even assuming that is true, then the proper measure to go forward in this case is they should move for summary judgment. If they have all the discovery they need to establish the piercing claim can't go forward, why are we here on the wrong standard? Why not bring the actual evidence forward and file a motion for summary judgment when the case returns to the circuit court? As to the question of estoppel, there's a reference to the absence of information about the loan defaults. And that actually is illustrative of why this situation on a piercing claim is different from the consideration of prior case where a fraud claim was before the court and before this court. The appellate court found that the absence of knowledge of loan defaults could not support a fraud claim, not because trading informed Patriot that the loans were in default, rather because they had a right under certain agreements to review certain books and records, and therefore reliance was absent. That is a very different framework and very different elements than what should go forward under a piercing claim, where the real question is, is there an overall element of injustice and unfairness? And so if you lull a creditor into a position of coming to the wrong conclusions and then go ahead and take steps, those questions of reliance are out the window, but it can support a piercing claim. Mr. Byrne, I'm still tracking your earlier assertion. So if we were to remand this back and then HELCO makes a motion for a summary judgment, like your earlier assertion, so your position would be they wouldn't do that because they couldn't prevail on that, under that standard? At this point, absolutely. I think that's true. But I think that to the extent that suggestions of all discovery is done, that's the appropriate way forward. Okay. So returning for a moment to this question of the knowledge of the loan defaults, they prevailed on the fraud claim that was affirmed on appeal, but we need not establish a fraud claim to sustain a piercing claim. There's Delaware cases on that, that's Blair v. Infineon Technologies, and there's Illinois cases on that, Steiner Electric. So there's no need to go to prove all the way to fraud to sustain a piercing claim, and that just is natural. If we were sustaining a fraud claim, there would be no need to go to the piercing claim. It's necessarily a lesser standard of proof and an overall series of factors that govern whether or not piercing is appropriate. So returning to the question of the tax distributions, Trayden argued, and I'm briefing again here today, that in an LLC, this is a pass-through tax entity, and therefore there is no abuse of the corporate form, and the tax distributions were not siphoning, but rather were proper. That's exactly the issue that we had on this appeal, which is it's looking at one individual factor and closing your eyes to all the other circumstances that relate to that payment, and that's what they're inviting the court to do. You know, we laid out that timeline earlier that showed this tax distribution was designed to take money out of a failing company, and they're saying that simply because the LLC agreement allows them to, that it can't be a basis for a piercing claim. That cannot be the law. So another example of that would be if you had a corporation where the bylaws allowed the president to write checks, and the president decides the company is going under and empties the bank account through checks to himself. The fact that the bylaws allow him to control the checkbook doesn't make every check that he writes not a basis for a piercing claim. That's essentially their argument on the tax distributions. And then finally, I'm going to just return again where we almost started the argument about the question of undercapitalization. We heard again about different cases looking at different debt-equity ratios as being appropriate or not. The issue is that is a factual judgment based on the totality of the circumstances, essentially inviting the court to say 10 to 1 is enough under Illinois law. And that would be a dangerous precedent for all kinds of reasons, and it's inconsistent with the standards. Basically saying these are fact judgments. The court should look, should give deference to the plaintiff, and should look at the totality of the circumstances involving the company that's at issue to determine whether or not it's undercapitalized. Thank you, Your Honors. Thanks, Counsel. Okay, thank you, Counsel, for excellent presentations, outstanding briefing, and the matter will be taken under advisement for study and opinion. Your respective clients can rest assured, no matter how the case comes out, know that they were very capably represented. Thank you.